UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CYNTHIA LOUISE VOYTON,

              Plaintiff,         6:17-CV-06858-MAT

      -v-                  **DECISION AND ORDER**

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

              Defendant.

_____

## INTRODUCTION

Cynthia Louise Voyton ("Plaintiff"), represented by counsel, brings this action under Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner" or "Defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion is denied, and Defendant's motion is granted.

## PROCEDURAL BACKGROUND

On October 6, 2010, Plaintiff protectively filed applications for DIB and SSI, alleging disability as of October 24, 2009, due to a shoulder injury, back injury, neck injury, and asthma. Administrative Transcript ("T.") 105, 110, 132-36. The claims were initially denied on December 27, 2011. T. 57-60. At Plaintiff's

request, a hearing was conducted on March 8, 2013, in Buffalo, New York by administrative law judge ("ALJ") Donald T. McDougall. Plaintiff appeared with her attorney and testified. A vocational expert ("VE") also testified. T. 25-53.

The ALJ issued an unfavorable decision on June 17, 2013. T. 9-24. The Appeals Council denied Plaintiff's request for review. T. 1-5. Plaintiff then instituted a civil action in the Western District of New York. *Voyton v. Colvin*, 6:14-cv-06692-JWF (W.D.N.Y. Dec. 12, 2014). On December 18, 2015, the Court (Feldman, M.J.) remanded the claim for further administrative proceedings. T. 994-99.

On remand, the Appeals Council vacated the ALJ's decision and ordered an ALJ to offer Plaintiff a hearing and issue a new decision. T. 1000-03. Prior to the second hearing, Plaintiff requested a closed period of disability from the original alleged onset date of October 24, 2009, through December 23, 2015, the day before Plaintiff was able to return to work at levels of substantial gainful activity. T. 1125-27.

On November 29, 2016, Plaintiff appeared at a hearing before ALJ Michael W. Devlin in Rochester, New York. Plaintiff appeared with her attorney and testified. A VE also testified. T. 942-67. At the hearing, Plaintiff's attorney requested the record remain open for two weeks to collect and submit medical records from Plaintiff's treating physician, Dr. Mark Ryan. T. 966. The ALJ

agreed to hold the record open until December 13, 2016. *Id*. On October 3, 2017, the ALJ issued an unfavorable decision. T. 913-37. Plaintiff then appealed directly to this Court.

## THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* 20 C.F.R. § 404.1520(a). Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2016. T. 918.

At step one of the sequential evaluation, the ALJ found that Plaintiff had engaged in substantial gainful activity beginning December 23, 2015, through the date last insured and the date of the decision. *Id*. The ALJ further found that Plaintiff had not engaged in substantial gainful activity during the closed period of October 24, 2009, through December 22, 2015. T. 919.

At step two, the ALJ determined that Plaintiff had the following "severe" impairments: asthma, obesity, and degenerative disc disease of the lumbar spine. *Id*. The ALJ also evaluated Plaintiff's medically determinable impairments of hypothyroidism, diabetes mellitus type I, and polycystic ovary disease. He determined these impairments had not caused more than a minimal limitation in basic work activities during the closed period and thus, were nonsevere. T. 920. The ALJ further found that Plaintiff's complaints of left hand pain, right toe pain, knee

pain, and depressed mood had no corresponding diagnoses or specialized treatment and thus, were not medically determinable impairments during the closed period. T. 920-21.

At step three, the ALJ found that during the closed period, Plaintiff's impairments did not singularly or in combination meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. T. 921. The ALJ specifically considered Listings 1.02 (Major Dysfunction of a Joint(s)), 1.04 (Disorders of the Spine), and 3.03 (Asthma).

Before proceeding to step four, the ALJ found that during the closed period, Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with the following additional limitations: could occasionally lift, carry, push, and pull up to 10 pounds; could frequently lift and/or carry less than 10 pounds; could stand and/or walk up to two hours in and eight-hour day; could sit about six hours in an eight-hour day; needed to be allowed to stand for one-to-two minutes after sitting for approximately 30 minutes and be allowed to sit for one-to-two minutes after standing for approximately 15 minutes; could occasionally climb ramps and/or stairs, balance, stoop, kneel, crouch, and crawl; could never climb ladders, ropes, or scaffolds; could occasionally reach and handle with the non-dominant left upper extremity; needed to avoid concentrated exposure to fumes, odors, dusts, gases, poor

ventilation, and other respiratory irritants; and needed to avoid concentrated exposure to extreme heat and extreme cold. T. 921.

At step four, the ALJ concluded that during the closed period, Plaintiff was unable to perform her past relevant work as an inventory specialist. T. 928.

At step five, the ALJ relied on the VE's testimony to find that taking into consideration Plaintiff's age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed during the closed period, including the representative occupations of surveillance system monitor, and call out operator. T. 928-29. The ALJ accordingly found that Plaintiff had not been disabled at any time during the closed period from October 24, 2009, through December 22, 2015, or through Plaintiff's date last insured of December 31, 2016. T. 930.

### SCOPE OF REVIEW

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. *See* 42 U.S.C. § 405(g) (the Commissioner's findings

"as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## DISCUSSION

Plaintiff contends that remand of this matter is warranted because: (1) the ALJ failed to properly develop the record; (2) the ALJ mischaracterized evidence to minimize the effects of Plaintiff's medically determinable impairment of polycystic ovarian syndrome; and (3) the ALJ's credibility determination is unsupported by substantial evidence. For the reasons discussed below, the Court finds Plaintiff's arguments are without merit and affirms the Commissioner's final determination.

## I. The ALJ Fulfilled His Duty to Develop the Record

Plaintiff first argues the ALJ failed to develop the record by failing to obtain medical records from Plaintiff's primary care

physician, Dr. Ryan. Plaintiff further contends the ALJ improperly based his RFC determination on Plaintiff's purported lack of treatment, while knowing he did not have all of Plaintiff's treatment records. For the reasons set forth below, the Court finds this argument is without merit.

Claimants generally have the burden of producing evidence; however, because a hearing on disability benefits is a non-adversarial proceeding, the ALJ has an affirmative duty to develop the administrative record. *Perez v. Charter*, 77 F.3d 41, 47 (2d Cir. 1996) (citing *Echevarria v. Secretary of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)).

At the November 2016 hearing, Plaintiff testified her current primary care doctor was Dr. Mark Ryan at Finger Lakes Medical who had been treating her for her back and shoulder pain. T. 951. Plaintiff's attorney stated she was waiting to receive records from Dr. Ryan and requested the administrative record be left open for an additional two weeks for her to obtain those records. T. 966. It was also noted that although a medical source statement had been requested of Dr. Ryan, he had refused to provide one because he had not seen Plaintiff recently. *Id*. *See also* T. 1126. The ALJ agreed to hold the record open until December 13, 2016, in order for Plaintiff to submit the additional medical records. T. 966. On November 30, 2016, the day after the hearing, Plaintiff submitted an additional 383 pages of medical records into evidence. *See*

T. 1529-1912. However, these records were from Newark Wayne Hospital and not from Finger Lakes Medical or Dr. Ryan. No records from Dr. Ryan's office were ever submitted into the record.

The Court cannot fault the ALJ for the absence of Dr. Ryan's treatment notes from the record. As the Commissioner points out, Plaintiff failed to utilize the numerous offers of assistance in obtaining records made by the Social Security Administration ("SSA") and the ALJ throughout the appeals process. *See, e.g.,* T. 1014 ("We can help you get evidence. If you need help, contact our office, your local Social Security office, or your representative. . ."); T. 1031 ("If a physician, expert or other witness is not cooperating with the production of documents important to your client's case, you may ask the ALJ to issue a subpoena that requires a person to submit documents or testify at your client's hearing."); T. 1042 and 1070 ("I may issue a subpoena that requires a person to submit documents or testify at your hearing. I will do this if the person has evidence or information that you reasonably need to present your case fully . . . If you want me to issue a subpoena, you must write to me as soon as possible."). The Second Circuit has found that an ALJ adequately fulfilled his obligation to develop the record where, as here, the claimant's counsel volunteered to obtain records, the ALJ kept the record open to allow supplementation of the record, counsel stated that there was nothing further to add, and counsel did not request

the ALJ's assistance in securing the additional evidence. *Jordan v. Comm'r of Soc. Sec.*, 142 F. App'x 542, 543 (2d Cir. 2005).

"The ALJ's duty to develop the record is not infinite, and where, as here, evidence in hand is consistent and sufficient to determine whether a claimant is disabled, further development of the record is unnecessary." *Tatelman v. Colvin*, 296 F. Supp.3d 608, 612 (W.D.N.Y. 2017) (internal quotation marks and citations omitted). *See also Perez*, 77 F.3d at 48 (where the evidence in the record is "adequate for [the ALJ] to make a determination as to disability," he or she is not required to further develop the record); *Morris v. Colvin*, No. 14-CV-689S, 2016 WL 3085427, at *4 (W.D.N.Y. June 2, 2016) (finding no error in the ALJ's determination that further development of the record was unnecessary where the ALJ had before him an adequate medical history to render a decision).

The Court finds that the record was sufficiently developed (notwithstanding the lack of records from Dr. Ryan), to provide a basis for the ALJ to assess Plaintiff's limitations as a result of her complaints of back and shoulder pain, which began after Plaintiff was involved in a motor vehicle accident on October 24, 2009. *See* T. 922-27. Specifically, the ALJ noted that orthopedic surgeon Dr. Franco Vigna assessed Plaintiff's back in 2010 and determined that no operative intervention was required. T. 923. Dr. Vigna also advised Plaintiff that pregnancy "may actually

improve her back pain" when Plaintiff reported she and her husband were considering a pregnancy. The ALJ noted that Dr. Vigna's encouragement to get pregnant suggested Plaintiff's back symptoms did not cause significant functional deficits. *Id*. The ALJ also reasoned that Plaintiff reporting "working all weekend" to her physical therapist in August 2010 also suggested greater functional capacity than Plaintiff testified to at her hearing. *Id*. Furthermore, the ALJ noted that laboratory diagnostic studies of Plaintiff's cervical and lumbar spine from December 2009 through March 2010 were inconsistent with significant pathologies. T. 922-23. Dr. Vigna performed independent readings of Plaintiff's cervical and lumbar spine and found that no operative intervention was required. T. 923.

Regarding Plaintiff's shoulder pain, the ALJ noted Plaintiff had undergone surgeries in February 2011 and August 2012, although interim clinical testing suggested mostly benign findings aside from the recovery periods. T. 923. The ALJ referenced both primary care records and MRI results in his analysis. He also noted that physical therapy records in 2011 indicated Plaintiff subjectively reported that "her overall condition is improved" and by May 2011, she was opting to skip formal physical therapy sessions and instead was "improving with an at home program of her own." *Id*. The ALJ noted that in October 2011, Plaintiff complained of left shoulder pain to primary care provider, Dr. Robert DiVencenzo. However, an

examination revealed only diffuse left shoulder tenderness and "mild" mid back tenderness with an absence of muscle spasm or an indication of any deficits in strength, sensory, ranges of motion, or reflexes. T. 924.

Plaintiff established new specialized care with Excelsior Orthopaedics in April 2012, where examining doctors found few clinical abnormalities of significance, despite Plaintiff's assertions of sharp, moderate and intermittent shoulder pain. T. 924. The ALJ noted that MRI studies were unremarkable, but Plaintiff underwent left shoulder arthroscopy in August 2012 and reported she was "doing well" within one week after the surgery. *Id*. By October 11, 2012, Plaintiff had a full range of motion in her left shoulder with no atrophy or joint instability. T. 925. Follow-up notes from January 2013 indicate Plaintiff reported 50-60 percent improvement in her shoulder post-surgery and she complained of only "mild" pain in her shoulder. The ALJ noted that through the remainder of 2013 and into February 2014, Plaintiff had sporadic attendance at Excelsior Orthopaedics for "mild" left shoulder pain and most prominent pain between her shoulder blades. *Id*. Clinical testing from that time was consistent with prior notes that established a full range of motion in the left shoulder despite crepitation and discomfort with evidence of atrophy. Plaintiff exhibited full strength in all extremities and normal muscle tone of the left shoulder. *Id.* The ALJ found that these mild

abnormalities, coupled with the fact Plaintiff was only prescribed Ibuprofen and infrequently sought treatment all supported his RFC determination. The ALJ further noted that over the next year and into early 2015, Plaintiff had no specialized care for her musculoskeletal impairments. Treatment notes for other complaints recorded no shoulder or back complaints while examination notes revealed the back, upper extremities, and lower extremities were all "normal to inspection." T. 925. The ALJ noted that in late 2015, Plaintiff complained her shoulder had become "somewhat bothersome" after returning to work the month prior. A physical examination was mostly within normal limits aside from Plaintiff's subjective pain, with range of motion and "mild" restrictions in left and right rotation. T. 926. In September 2015, Plaintiff complained of a right foot bruise and gave no indication of shoulder problems. In November 2015, she complained of shoulder pain and she was diagnosed with left shoulder rotator cuff tendinitis with impingement and received a cortisone injection and short course of physical therapy. T. *Id*.

Using this medical history, coupled with Plaintiff's subjective complaints, which the ALJ purported to give "extreme deference" (*see* T. 926), the ALJ crafted the RFC finding to include several additional exertional limitations to sedentary work, including lifting, carrying, pushing, pulling, standing, walking, and climbing limitations. T. 921. Accordingly, the Court finds the

existing medical evidence of record, which covers Plaintiff's treatment for back and shoulder pain for the entirety of the closed period, contained substantial evidence for the ALJ's decision. *Morris,* 2016 WL 3085427, at *4.

## II. The ALJ Properly Evaluated Plaintiff's Polycystic Ovarian Syndrome

Plaintiff next argues remand is appropriate because the ALJ failed to properly evaluate her Polycystic Ovarian Syndrome ("PCOS") and thus, the ALJ failed to support his RFC finding with substantial evidence. Specifically, Plaintiff contends the ALJ mischaracterized evidence throughout the record to minimize the effects of Plaintiff's PCOS on her functional abilities. Plaintiff further contends the ALJ impermissibly considered her desire to become pregnant and her resulting treatment decisions, supporting the suggestion that the ALJ had a bias against Plaintiff's gynecological impairments. For the reasons set forth below, the Court finds these arguments are without merit.

### A. The ALJ Properly Considered Plaintiff's Medical Evidence as It Related to Her PCOS

At step two, the ALJ considered Plaintiff's episodic complaints of abdominal pain, with the diagnoses of dysfunctional uterine bleeding, "mild" chronic gastritis, gastroesophageal reflux disorder, history of ovarian cysts, and polycystic ovary disease. T. 920. He noted Plaintiff had received laparoscopic surgery in November 2011 for removal of an ovary and further noted that

Plaintiff's treatment for polycystic ovary disease had become more significant since her return to substantial gainful activity. However, he determined that the lack of objective evidence suggesting any of these impairments, singly or in combination, caused more than a minimal limitation in basic work activities warranted a finding that these impairments were nonsevere during the closed period. *Id*.

Plaintiff contends that the sum of all the above referenced symptoms that occurred during the closed period were actually symptoms of PCOS and accordingly, should have supported a finding that PCOS was a severe

impairment at step two. For the reasons set forth below, the Court disagrees.

At step two of the sequential disability assessment, the claimant bears the burden of demonstrating that an alleged medical impairment significantly limits his or her ability to engage in basic work-related functions. If the impairment does not significantly limit his or her ability to engage in basic work-related functions, that impairment is determined to be nonsevere. *See* 20 C.F.R. §404.1522(a). To be considered severe, an impairment or combination of impairments must cause "more than minimal limitations in [a claimant's] ability to perform work-related functions." *Donahue v. Colvin*, No. 6:17-CV-06838(MAT), 2018 WL

2354986, at *5 (W.D.N.Y. May 24, 2018); *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003).

Plaintiff has failed to identify evidence that clearly supports her theory that any of her abdominal pain that occurred during the closed period was caused by her PCOS. The medical record fails to provide a clear etiology of Plaintiff's complaints of abdominal pain during the closed period. Plaintiff asserts that consultative examiner Dr. Marisela Gomez "definitively diagnosed" PCOS at her evaluation which, as the Commissioner notes, was five months after the end of the disability period. While Dr. Gomez's May 23, 2016 report lists PCOS among Plaintiff's diagnoses, her consultative report documents no evaluation or testing specific to that condition. T. 1129-31. Rather, it appears that Dr. Gomez relied on Plaintiff's self-report of having a history of PCOS. T. 1128-32. And Plaintiff's testimony referred only to a history of ovarian cysts and treatment for endometriosis. She never mentioned PCOS as the cause of her symptoms. T. 958. Furthermore, treating doctors continued to seek the etiology of Plaintiff's abdominal pain throughout and even past the relevant period, eventually ruling out PCOS and instead diagnosing Plaintiff with persistent mesenteric adenitis in October 2016. T. 1884.

Plaintiff's argument that the ALJ should have further developed Plaintiff's gynecological records before making his step two finding also fails. As noted above, it is the Plaintiff's

burden to demonstrate an alleged medical impairment significantly limits his or her ability to engage in basic work-related functions. *See Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry"); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999). Moreover, the ALJ had before him medical records relating to Plaintiff's gynecological history, including her November 2011 laparoscopic oophorectomy (*see* T. 920), as well as testimony from two hearings. Where the evidence in the record is "adequate for [the ALJ] to make a determination," further development is not required. *Perez*, 77 F.3d at 48. Furthermore, as Plaintiff points out in her brief, additional gynecological records were not addressed at the hearing by Plaintiff's counsel.

To the extent Plaintiff argues records from Dr. Ryan may have provided support for a finding that Plaintiff's PCOS was a severe impairment, the Court finds this purely speculative. Plaintiff testified Dr. Ryan treated her for back and shoulder pain and made no mention that he was treating her for any gynecological issues. T. 951. Accordingly, the Court finds the ALJ acted properly and within his discretion by choosing to hold the record open, at Plaintiff's request, giving Plaintiff the opportunity to provide additional evidence to support her allegations.

In any event, even assuming *arguendo* that the ALJ erred at step two by finding Plaintiff's PCOS was nonsevere, the Court finds

that error would be harmless because the ALJ continued the sequential analysis. "Courts have developed a specialized variant of harmless-error analysis with respect to Step 2 severity errors in social security proceedings.... [W]hen an administrative law judge identifies some severe impairments at Step 2, and then proceeds through [the] sequential evaluation on the basis of [the] combined effects of all impairments, including those erroneously found to be non-severe, an error in failing to identify all severe impairments at Step 2 is harmless." *Snyder v. Colvin*, No. 5:13-CV-585 GLS/ESH, 2014 WL 3107962, at *5 (N.D.N.Y. July 8, 2014); *see also Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (step two error was harmless where all of the claimant's conditions "were considered during the subsequent steps"). "Specifically, when functional effects of impairments erroneously determined to be non-severe at Step 2 are, nonetheless, fully considered and factored into subsequent residual functional capacity assessments, a reviewing court can confidently conclude that the same result would have been reached absent the error." *Snyder*, 2014 WL 3107962 at *5.

The ALJ continued the sequential analysis past step two and included a discussion of Plaintiff's medical workups related to ovarian cysts, infertility, and general abdominal pain beginning in late 2014 and extending into late 2016. T. 925. Furthermore, Plaintiff gave "significant" weight to the consultative opinion of

Dr. Gomez, who included Plaintiff's reported history of PCOS in her diagnoses and presumably took any related symptoms into consideration when forming her opinion of Plaintiff's functional limitations. *See* T. 926 *referring to* T. 1128-32.

Plaintiff has not met her burden of demonstrating PCOS significantly limited her ability to engage in basic work-related activities during the closed period, as required by 20 C.F.R. §404.1522(a). Furthermore, Plaintiff has also failed to demonstrate that the ALJ's omission of PCOS as a severe impairment during the closed period at step two had any meaningful impact on the remainder of his analysis, or that explicitly finding Plaintiff's PCOS severe at step two would have resulted in a different outcome. *See Poles v. Berryhill*, No. 17cv6189(MAT), 2018 WL 1471884, at *3 (W.D.N.Y. Mar. 26, 2018) (any error at step two was harmless and did not necessitate remand where plaintiff failed to demonstrate the ALJ's omission of her impairments had any meaningful impact on the remainder of the ALJ's analysis). Accordingly, the Court finds no error in the ALJ's evaluation of Plaintiff's PCOS at step two.

**B.    The ALJ Properly Considered Plaintiff's Treatment Decisions**

Plaintiff also suggests that the ALJ may have had a bias against her gynecological impairments and that he held Plaintiff's attempts to become pregnant against her. In particular, Plaintiff contends the ALJ improperly faulted her for opting against getting a cortisone injection for her shoulder pain when she was trying to

conceive, and further erred by failing to consider Plaintiff's treatment for abdominal pain, which she argues is directly connected to her PCOS, as "significant" treatment. The Court finds Plaintiff's argument without merit.

To show bias resulting in the denial of a fair hearing, a claimant must show that the ALJ exhibited a "deep-seated favoritism or antagonism that would make a fair judgment impossible." *Whitfield v. Astrue*, 476 F. App'x 408, 409 (2d Cir. April 19, 2012) (quoting *Reddy v. Commodity Futures Trading Comm'n*, 191 F.3d 109, 119-20 (2d Cir. 1999)). Plaintiff has failed to make such a showing here.

In his decision, the ALJ noted Plaintiff's August 2010 discussion with orthopedic surgeon Dr. Vigna, in which he "encouraged" Plaintiff to get pregnant if she so wished, noting that it "may actually improve her back pain." T. 923 *referring to* T. 335. The ALJ then reasoned that Dr. Vigna's statement suggested Plaintiff's back symptoms were not causing significant functional deficits at that time. At a later point in the decision, the ALJ noted that in February 2014, Plaintiff declined a cortisone injection or surgical referral for her shoulder pain because she was "attempting to get pregnant." T. 925 *referring to* T. 1164. The ALJ further noted that while "[o]ne cannot be compelled to undergo treatment," he "considered her lack of significant treatment combined with unremarkable laboratory diagnostic and clinical

testing [as] contrasting with her subjective reports." T. 925. This assessment was made in the context of Plaintiff's shoulder impairment and the limitations associated with it.

The Court finds that it was appropriate for the ALJ to consider Plaintiff's decision to forgo cortisone injections and further surgery, regardless of the reason, in addition to her repeated unremarkable clinical findings, in the context of her functional limitations. The Court also finds no error in the ALJ's interpretation of Dr. Vigna's suggestion that pregnancy may actually improve Plaintiff's back pain. *See Amoroso v. Colvin*, No. 13-CV-5115 SJF, 2015 WL 5794226, at *10 (E.D.N.Y. Sept. 30, 2015) (ALJ "properly considered [claimant's] daily activities . . . and her 'conservative' treatment . . . which both suggest that she is capable of performing sedentary work"). Furthermore, the Court finds Plaintiff has failed to demonstrate any showing of bias on the ALJ's part. Instead, the Court finds the ALJ's decision reflects that he carefully considered the record as a whole, weighed conflicting evidence, and supported his conclusions with substantial evidence.

For all the foregoing reasons, the Court finds that the ALJ properly evaluated Plaintiff's PCOS and accordingly finds that remand is not warranted on this basis.

### III. The ALJ Properly Assessed Plaintiff's Credibility

Lastly, Plaintiff argues that the ALJ erred in his evaluation of Plaintiff's subjective complaints. Specifically, Plaintiff contends the ALJ's credibility finding was negatively affected by: (1) the ALJ's failure to properly develop the record; and (2) the ALJ's factually inaccurate and possibly biased evaluation of Plaintiff's PCOS.

As an initial point, the Court notes that an ALJ's credibility assessment is entitled to deference. "Because the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, his decision to discredit subjective testimony is entitled to deference and may not be disturbed on review if his disability determination is supported by substantial evidence." *Hargrave v. Colvin*, No. 12-CV-6308 (MAT), 2014 WL 3572427, at *5 (W.D.N.Y. July 21, 2014) (internal quotation omitted). For the reasons set forth below, the Court finds that the ALJ's credibility assessment was reasonable and consistent with the record.

In his decision, the ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms, her statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. T. 922. The ALJ noted that Plaintiff had a

multitude of evaluations for her left shoulder and responded well to her two shoulder surgeries, generally received conservative care, and had few clinical abnormalities even during heightened periods of symptomatology. T. 926. He further noted that in making his RFC finding, he afforded extreme deference to Plaintiff's subjective complaints and considered the record in the light most favorable to Plaintiff. *Id*. The ALJ afforded "great" and "significant" weight to the two medical source statements of record - functional assessments provided by consultative examiners Dr. John Schwab and Dr. Marisela Gomez, respectively. T. 926. These were all appropriate factors for the ALJ to consider when making his credibility finding. *See Heagney-O'Hara v. Commissioner of Social Sec.*, 646 F. App'x 123, 126 (2d Cir. April 21, 2016) ("An ALJ is required to consider a variety of factors when assessing a claimant's credibility, including whether the claimant has received treatment, other than medication, to relieve her symptoms) (citing 20 C.F.R. § 404.1529(c)(3)(v)).

The Court finds the ALJ's determination that Plaintiff's functional limitations relating to her shoulder pain were limited in severity and were primarily during periods of post-surgery rehabilitation are well-supported by the medical evidence and further support his credibility finding. Plaintiff underwent two shoulder surgeries following a 2009 automobile accident; the first in February 2011 and the second in August 2012. T. 923. The ALJ

22

noted that primary care notes prior to Plaintiff's first surgery referenced relatively intact clinical testing and that Plaintiff had undergone a course of physical therapy between June 2010 and January 2011. *Id.* Following Plaintiff's February 2011 arthroscopy with subacromial decompression, acromioplasty, and rotator cuff debridement, Plaintiff reported her overall condition had improved, including a greater range of motion and less pain. T. 233. The ALJ noted that by May 2011, Plaintiff reportedly skipped any significant formal physical therapy and instead was "improving with an at home program of her own." T. 923. At that time, physician's assistant Tara L. Tutwiler opined Plaintiff was "able to return to work with the light duty restrictions" of no repetitive lifting, pushing, or pulling greater than 10 pounds and with limited overhead activity. T. 923 *referring to* T. 394. Plaintiff complained of shoulder pain again in October 2011 to her primary care physician, who noted diffuse left shoulder tenderness and "mild" mid back tenderness. T. 924 *referring to* T. 305-08.

In April 2012, Plaintiff established specialized care with Excelsior Orthopaedics. T. 542. She was diagnosed with impingement syndrome and given a subacromial Lidocaine injection. T. 544. On August 21, 2012, Plaintiff underwent a second arthroscopy with subacromial decompression. At her follow-up appointment on August 28, 2012, Plaintiff reported she was "doing well" and her pain was under control with medication. Plaintiff reported she had

stopped wearing her sling three days prior. T. 564. The ALJ noted that by October 2012, Plaintiff had a full range of motion in her left shoulder and appeared to be opting for at-home exercises instead of physical therapy. T. 925. Follow-up notes from January 2013 record Plaintiff's subjective reports of 50-60 percent improvement from her second surgery and that she complained of only "mild" pain in the shoulder. The ALJ also noted that her provider recommended massage therapy. *Id*. Plaintiff continued sporadic treatment with Excelsior Orthopaedics into February 2014. She repeatedly denied numbness, tremor, cramping, stiffness, swelling, or weakness. T. 925 *referring to* T. 1146, 1149, 1155. Furthermore, her examination findings reported full range of motion and full strength in her left shoulder in January 2014. T. 1159.

In sum, the Court finds that Plaintiff's treatment history, clinical findings, and demonstrated improvement of her symptoms support the ALJ's ultimate credibility finding. Furthermore, this Court has found the ALJ fulfilled his duty to develop the record and properly evaluated all of Plaintiff's medical symptoms and impairments at step two. Accordingly, for all of the reasons set forth above, the Court finds no error in the ALJ's finding that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not fully credible and thus finds that remand is not warranted on this basis.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Docket No. 11) is denied, and the Commissioner's motion for judgment on the pleadings (Docket No. 17) is granted. Plaintiff's complaint is dismissed in its entirety with prejudice. The Clerk of Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:     March 20, 2019
           Rochester, New York